JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RICHARD HIGHTOWER

**DEFENDANTS**

CITY OF PHILADELPHIA

**(b)** County of Residence of First Listed Plaintiff DELAWARE COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant PHILADELPHIA COUNTY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas R. Kline, Esquire and Colin Burke, Esquire
Kline & Specter, PC 1525 Locust Street, Philadelphia, PA 19102
(215) 772-1000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983

Brief description of cause: Plaintiff sustained catastrophic injuries after being assaulted by an inmate who knowingly had a history of violent behavior and violence against other inmates and prison staff and who suffered from serious mental health illness

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
9/13/2021

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _604 Briar Cliff Road, Upper Darby, PA 19082_

Address of Defendant: _1515 Arch Street, 14th Floor, Philadelphia, PA 19102_

Place of Accident, Incident or Transaction: _CFCF, 7901 State Road, Philadelphia, PA 19136_

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _9/13/2021_      _CB_ *Must sign here*      _204924_

*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _COLIN BURKE_____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _9/13/2021_      _CB_ *Sign here if applicable*      _204924_

*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

**<u>ADDRESSES OF ADDITIONAL DEFENDANTS</u>**

7901 State Road
Philadelphia, PA 19136


8201 State Road
Philadelphia, PA 19136

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _604 Briar Cliff Road, Upper Darby, PA 19082_

Address of Defendant: _1515 Arch Street, 14th Floor, Philadelphia, PA 19102_

Place of Accident, Incident or Transaction: _CFCF, 7901 State Road, Philadelphia, PA 19136_

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _9/13/2021_    _CB_   *Must sign here*    _204924_

*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _COLIN BURKE_____, counsel of record *or* pro se plaintiff, do hereby certify:

☒   Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐   Relief other than monetary damages is sought.

DATE: _9/13/2021_    _CB_   *Sign here if applicable*    _204924_

*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

**<u>ADDRESSES OF ADDITIONAL DEFENDANTS</u>**

7901 State Road
Philadelphia, PA 19136

8201 State Road
Philadelphia, PA 19136

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| RICHARD HIGHTOWER | : | CIVIL ACTION |
| v. | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits.                                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court.  (See reverse side of this form for a detailed explanation of special
  management cases.)                                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (**X**)

| | | |
|---|---|---|
| **9/13/2021** | **Colin Burke, Esq.** | **Plaintiff** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| **215-772-1000** | **215-792-5523** | **colin.burke@klinespecter.com** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HIGHTOWER<br>c/o Gwen Maddox<br>604 Briar Cliff Road<br>Upper Darby, PA 19082<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF PHILADELPHIA<br>1515 Arch Street – 14th Floor<br>Philadelphia, PA 19102<br><br>and<br><br>CITY OF PHILADELPHIA<br>DEPARTMENT OF PRISONS<br>7901 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>CURRAN-FROMHOLD CORRECTIONAL<br>FACILITY<br>7901 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>WARDEN JOHN DELANEY<br>Detention Center<br>8201 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>SERGEANT SHANTEL MAJOR<br>Curran-Fromhold Correctional Facility<br>7901 State Road<br>Philadelphia, PA 19136<br><br>and | CIVIL ACTION<br><br>Case No. |

| | |
|---|---|
| CORRECTIONAL OFFICER JOHN DOES 1-10<br>c/o Curran-Fromhold Correctional Facility<br>7901 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>CORIZON HEALTH, INC.<br>8201 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>DANIELLE MCGETTIGAN, LPN a/k/a<br>DANIELLE MCGETTIGAN-TISCHLER, LPN<br>Corizon Health, Inc.<br>8201 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>ANTHONY MATTHEWS, RN a/k/a<br>ANTHONY W. MATTHEWS, RN<br>Corizon Health, Inc.<br>8201 State Road<br>Philadelphia, PA 19136<br><br>and<br><br>MEDICAL JOHN DOES 1-10<br>c/o Corizon Health, Inc.<br>8201 State Road<br>Philadelphia, PA 19136<br><br>*Defendants.* | |

## COMPLAINT – CIVIL ACTION

## JURISDICTION AND VENUE

1.      Jurisdiction is based on 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      The events, acts and omissions that give rise to Plaintiff's claims and form the subject matter of this action occurred in Philadelphia, Pennsylvania.

3.      Venue is proper in the Eastern District of Pennsylvania because a substantial part of the events, acts and omissions that give rise to Plaintiff's claims and form the subject matter of this action occurred in this judicial district.

## PARTIES

4.      Plaintiff, Richard Hightower, is an adult individual and citizen of the Commonwealth of Pennsylvania, who resides in a nursing home located at Broomall Manor, 43 Church Lane, Broomall PA 19008.

5.      Defendant, City of Philadelphia, is a political subdivision and governmental or other jural entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a principal place of business at 1515 Arch Street – 14th Floor, Philadelphia, PA 19102.

6.      Defendant, City of Philadelphia Department of Prisons, is a governmental or other jural entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a principal place of business at 7901 State Road, Philadelphia, PA 19136.

7.      Defendant, Curran-Fromhold Correctional Facility (hereinafter "CFCF") is a governmental or other jural entity organized and existing under and by virtue of the laws of the

Commonwealth of Pennsylvania, with a principal place of business at 7901 State Road, Philadelphia, PA 19136.

8.     Defendant, Warden John Delaney (hereinafter "Warden Delaney") is an adult individual and citizen of the Commonwealth of Pennsylvania with a place of business at the above-captioned address.

9.     At all times relevant hereto, Warden Delaney was the Warden of CFCF.

10.     Defendant, Sergeant Shantel Major (hereinafter "Sergeant Major") is an adult individual and citizen of the Commonwealth of Pennsylvania with a place of business at the above-captioned address.

11.     At all times relevant to this Complaint, Defendants Warden Delaney and Sergeant Major were correctional officers and/or supervisors and agents, servants, and/or employees of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF assigned to work at CFCF.

12.     Defendant Correctional Officer John Does 1-10, a fictitious designation, were correctional officers and/or supervisors and agents, servants, and/or employees of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF assigned to work at CFCF and responsible for the conduct which gives rise to this action, namely the housing of inmate Anthony Tyler (hereafter "Inmate Tyler") with Plaintiff on September 13, 2019 and September 14, 2019.  Plaintiff does not presently know the names of these defendants despite having conducted a reasonable search with due diligence but will seek leave to amend the Complaint so as to name each appropriate defendant after additional discovery.

13.     Defendant, Corizon Health, Inc. is a corporation or other jural entity organized and existing under and by virtue of the laws of the State of Delaware with a principal place of business at 8201 State Road, Philadelphia, PA 19136.  The claim asserted against this Defendant are for negligence and/or professional negligence of its actual and/or ostensible agents, servants, and/or employees, and for its direct negligence as stated more fully herein.  A Certificate of Merit pursuant to Pennsylvania Rule of Civil Procedure ("Pa. R. Civ. P.") 1042.3 regarding the treatment, practice or work of this Defendant is attached hereto as Exhibit A.

14.     Defendant, Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN (hereinafter "Nurse McGettigan") is an adult individual and citizen of the Commonwealth of Pennsylvania with a place of business at the above-captioned address.

15.     Defendant, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN (hereinafter "Nurse Matthews") is an adult individual and citizen of the Commonwealth of Pennsylvania with a place of business at the above-captioned address.

16.     At all times relevant to this Complaint, Defendants Nurse McGettigan and Nurse Matthews were medical professionals and agents, servants, and/or employees of Defendant Corizon Health, Inc. assigned to provide medical services at CFCF and/or the Detention Center located at 8201 State Road, Philadelphia, PA 19136 (hereinafter "the Detention Center").

17.     Defendant Medical John Does 1-10, a fictitious designation, were medical professionals and agents, servants, and/or employees of Defendant Corizon Health, Inc. assigned to provide medical services at CFCF and/or the Detention Center, and who were responsible for providing medical clearance information to prison personnel for inmate Tyler during August 2019 and September 2019.  Plaintiff does not presently know the names of these defendants

despite having conducted a reasonable search with due diligence but will seek leave to amend the Complaint so as to name each appropriate defendant after additional discovery.

18.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF owned, operated, maintained, were responsible for, and/or otherwise controlled a prison and correctional facility under the name Curran-Fromhold Correctional Facility located at 7901 State Road, Philadelphia, PA 19136.

19.     At all times relevant hereto, Defendant Corizon Health, Inc. owned, operated, maintained, was responsible for, and/or otherwise controlled a medical unit located at the Detention Center, 8201 State Road, Philadelphia, PA 19136.

20.     At all times relevant hereto, Defendant Corizon Health, Inc. contracted with the Philadelphia Prison System to provide medical services to its inmates at the Detention Center and CFCF.

21.     At all times relevant hereto, Defendant Corizon Health, Inc. and its actual and/or ostensible agents, servants, and/or employees, including Nurse McGettigan and Nurse Matthews, had a duty to act reasonably and to exercise reasonable care in carrying out their duties as medical professionals.

22.     At all times relevant hereto, Defendant Corizon Health, Inc. and its actual and/or ostensible agents, servants, and/or employees, including Nurse McGettigan and Nurse Matthews, had a duty to ensure proper documentation and communication of medical clearances provided to inmates, including inmate Tyler, to allow for appropriate placement and/or housing of inmates by the Correctional Staff.

23.     At all times relevant hereto, Defendant Corizon Health, Inc. acted or failed to act by and through its actual and/or ostensible agents, servants, and/or employees, including Nurse

6

McGettigan, Nurse Matthews, and physicians, nurses, therapists, technicians, and/or medical practice personnel whose activities and conduct with regard to documentation and communication of medical clearances relating to inmate Tyler, and  are presently known only to Defendants, but not to Plaintiff, after reasonable investigation and in the absence of complete discovery.

24.     At all times relevant hereto, Defendant Corizon Health, Inc. was liable for the negligent acts and/or omissions of its actual and/or ostensible agents, servants, and/or employees, including Nurse McGettigan, Nurse Matthews, and physicians, nurses, therapists, technicians, and/or medical practice personnel whose activities and conduct with regard to the medical care and treatment and proper documentation and communication of medical clearances relating to inmate Anthony Tyler are presently known only to Defendants, but not to Plaintiff, after reasonable investigation and in the absence of complete discovery, under theories of agency, master-servant, *respondeat superior*, and/or control or right of control.

25.     At all times relevant hereto, Defendant Corizon Health, Inc. and its actual and/or ostensible agents, servants, and/or employees, as identified herein, were engaged in the practice of medicine and/or nursing, and were obligated to bring to bear in the practice of their respective professions the professional skill, knowledge, and care that they possessed, and to pursue their professions in accordance with reasonably safe and acceptable standards of medicine and nursing in general, and in their particular specialties.

## **BACKGROUND**

26.     The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

27.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of placing and/or housing violent offenders in cells with other inmates.

28.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of placing and/or housing violent offenders in cells with non-violent inmates.

29.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of placing and/or housing inmates with a history of violent behavior in cells with other inmates.

30.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of placing and/or housing inmates with a history of violence against other inmates and/or prison staff in cells with other inmates.

31.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of placing and/or housing inmates with severe mental health illness in cells with other inmates.

32.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of placing and/or housing inmates with a history of violence with other inmates thereby creating a substantial risk of serious harm to other inmates.

33.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of ignoring threats of harm made by inmates against other inmates.

34.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of failing to timely respond to threats of harm made by inmates against other inmates.

35.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of failing to immediately remove an inmate from a cell when the inmate is threatening to commit violence against his cellmate.

36.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of failing to properly classify inmates to ensure the safety of other inmates.

37.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF had a custom and practice of failing to adhere to classification protocols related to inmate housing to ensure the safety of other inmates.

38.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF knew that housing violent inmates with other inmates created a substantial risk of harm to other inmates' health and safety but disregarded the risk.

39.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF maintained a custom and practice of failing to identify and respond to the improper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness.

40.     As a result of these customs and practices, inmates with violent tendencies and/or a history of violence and/or mental health illness were improperly placed and/or housed thereby causing serious injury and/or death to other inmates.

41.     The above customs and practices demonstrate a deliberate indifference to inmates' civil rights.

42.     The above customs and practices violate inmates' constitutional rights under the Eighth and Fourteenth Amendments.

43.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF knew the above customs and practices resulted in improper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness causing serious injury and/or death to other inmates.

44.     As a result of these customs and practices, inmate Anthony Tyler, who had a history of violent behavior and of violence against other inmates and prison staff and who suffered from serious mental health illness, was improperly housed with Plaintiff, resulting in serious injuries to Plaintiff.

45.     At all times relevant hereto, Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF maintained policies and/or procedures with regard to classification, assessment, placement and/or housing of inmates.

46.     The policies and procedures determined how inmates were assessed, classified, and ultimately housed.

47.     The policies and/or procedures of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and Defendant CFCF, with regard to the classification, assessment, placement, and/or housing of inmates, are deficient on their face.

48.     As a result of these deficient policies and/or procedures, violent inmates, with violent histories and mental health illness, are improperly placed with other inmates thereby subjecting them to and causing serious injury and/or death.

49.     As a result of these deficient policies and/or procedures, correctional staff would not intervene, in a timely manner, when inmates threatened harm to another, subjecting inmates to and causing serious injury and/or death.

50.     The above policies and/or procedures caused inmates, like Plaintiff, a substantial risk of serious harm via assaultive behavior at the hands of violent inmates.

51.     The above policies and/or procedures demonstrate a deliberate indifference to inmates' civil rights.

52.     The above policies and/or procedures violate inmates' constitutional rights under the Eighth and Fourteenth Amendments, i.e., the right to be free from assault by other inmates.

53.     As a result of the above policies and/or procedures, inmate Anthony Tyler, who had a history of violent behavior and of violence against other inmates and prison staff and who suffered from serious mental health illness, was improperly housed with Plaintiff, resulting in serious injuries to Plaintiff.

54.     The improper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness was known to Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF.

55.     The improper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness caused serious injuries and/or death to other inmates within their care and was known to Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF.

11

56.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF failed to properly train their correctional officers and supervisors to recognize improper housing of inmates with violent tendencies and/or a history of violence and/or mental health illness and to prevent and/or intervene a violent assault by one inmate against another.

57.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF failed to properly train their correctional officers and supervisors to adhere to the classification and assessment of inmates so as to prevent violent inmates, who presented a substantial risk of harm to other inmates, from being house with other inmates and causing such harm.

58.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF failed to properly train their correctional officers and supervisors to identify and timely intervene in violent assaults against other inmates.

59.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF failed to properly train their correctional officers and supervisors to respond to threats of violence against other inmates.

60.     Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF failed to supervise their correctional officers and supervisors to ensure they complied with the aforementioned policies and/or procedures.

61.     As a result of the failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to train and supervise their correctional officers and supervisors, inmates with violent tendencies and/or a history of violence

and/or mental health illness were improperly placed and/or housed with other inmates thereby causing serious injury and/or death to other inmates.

62.     As a result of the failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to train and supervise their correctional officers and supervisors, inmates were subjecting to violence through assaultive behavior of other inmates.

63.     The failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to properly train and supervise their correctional officers and supervisors demonstrates a deliberate indifference to inmates' civil rights.

64.     The failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to properly train and supervise their correctional officers and supervisors, resulting in improper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness, the failure to identify, prevent, respond and interfere with threats of violence and violent assault, violates inmates' constitutional rights under the Eighth and Fourteenth Amendments.

65.     As a result of the failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to train and supervise their correctional officers and supervisors, inmate Anthony Tyler who had a history of violent behavior and of violence against other inmates and prison staff and who suffered from serious mental health illness, was improperly housed with Plaintiff, resulting in serious injuries to Plaintiff.

66.     As a result of the failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to train and supervise their

correctional officers and supervisors, inmate Anthony Tyler who had a history of violent behavior and of violence against other inmates and prison staff and who suffered from serious mental health illness, was permitted to assault Plaintiff.

67.    As a result of the failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to train and supervise their correctional officers and supervisors, inmate Anthony Tyler who had a history of violent behavior and of violence against other inmates and prison staff and who suffered from serious mental health illness, was permitted to continue to assault Plaintiff.

68.    As a result of the failure of Defendant City of Philadelphia, Defendant City of Philadelphia Department of Prisons, and/or Defendant CFCF to train and supervise their correctional officers and supervisors, inmate Anthony Tyler who had a history of violent behavior and of violence against other inmates and prison staff and who suffered from serious mental health illness, was given the access and opportunity to assault Plaintiff without timely intervention.

## **MATERIAL FACTS**

69.    Beginning on September 13, 2019, Plaintiff, Richard Hightower, was an inmate at CFCF held on non-violent charges.

70.    Plaintiff was housed in Unit B1, Pod 4 at CFCF and was assigned to Cell 21, bed 3.

71.    On August 19, 2019, Inmate Tyler entered CFCF on assaultive and violent charges including aggravated assault, criminal trespass, terroristic threats, recklessly endangering another person, burglary, possessing an instrument of crime, simple assault, and criminal mischief.

72.     Inmate Tyler entered CFCF with multiple stab wounds to his body indicative of a recent violent and assaultive encounter.

73.     On August 19, 2019, Inmate Tyler was transferred to the Detention Center ("DC") where he was admitted to the Infirmary for medical treatment of his stab wounds.

74.     On August 21, 2019, Inmate Tyler was medically cleared of tuberculosis by Nurse Matthews and medically cleared for housing by the DC Infirmary/Public Health Services Wing ("PHSW").

75.     On September 13, 2019, Inmate Tyler returned to CFCF at which time he was evaluated by Nurse McGettigan.

76.     Upon Inmate Tyler's return to CFCF, he was improperly placed back on the intake unit as "CFCF in-house Movement or CMR [Classification, Movement and Registration]."

77.     Upon information and belief, when Inmate Tyler returned to CFCF,  the correctional staff did not receive a medical clearance confirmation per protocol.

78.     Upon Inmate Tyler's return to CFCF, neither the time keeping officer in the receiving room nor any other CFCF staff members contacted the triage nurse or any staff members at DC PHSW to see if Inmate Tyler had his intake screening completed and to learn if he was medically cleared before being housed.

79.     Because Inmate Tyler was classified on August 21, 2019 at DC PHSW, he should not have been housed in intake upon his return to CFCF.

80.     On September 14, 2019 at approximately 5:40, Inmate Tyler was assigned to bed 1 in Plaintiff's cell, Cell 21, in Unit B1, Pod 4 at CFCF.

81.     Upon information and belief, Inmate Tyler was angry for being improperly placed back in an intake unit.

82.     After his placement inside Cell 21, but before of his assault of Plaintiff, Inmate Tyler began to act out and threaten harm to Plaintiff.

83.     During the evening of September 15, 2019, Inmate Tyler continued to bang on the door to Cell 21 and scream out, including threats of violence against Plaintiff.

84.     Sergeant Major, who was assigned to the 15:00 to 23:00 shift on Unit B1, Pod 4 at CFCF, eventually went to Cell 21.

85.     Inmate Tyler told Sergeant Major that he needed to get out of the cell because the cell was dirty and his "cellee" (Plaintiff) was dirty, too.

86.     Instead of removing inmate Tyler, Sergeant Major told him that no cell changes would be made until the 7 to 3 shift.

87.     Inmate Tyler responded that if he could not get out of his cell then he would kill his cellmate, Plaintiff.

88.     Instead of removing inmate Tyler, Sergeant Major took no action to protect Plaintiff.

89.     Sergeant Major ignored the threats of violence made by Inmate Tyler.

90.     Thereafter, Inmate Tyler grabbed Plaintiff, who was asleep on the top bunk, and forcefully drove him into the cement floor and proceeded to brutally punch and kick Plaintiff about the face, upper body, and chest.

91.     Only after Plaintiff was caused to suffer catastrophic and life changing injuries did Sergeant Major enter Cell 21.  She proceeded to pepper spray Inmate Tyler in the face, but left the cell when Inmate Tyler came toward her.

16

92.     When the responding officers arrived, Inmate Tyler was handcuffed and taken to medical to be decontaminated.

93.     Plaintiff was transported from Cell 21 by medics and taken to Jefferson Torresdale Hospital.  He was later airlifted to Thomas Jefferson University Hospital in Center City due to his severe and catastrophic injuries.

94.     Plaintiff was paralyzed as a result of this violent assault.

95.     Inmate Tyler was subsequently charged with assault non-staff w/ injuries, assault on inmate by inmate, disrespecting any staff member, disturbing other inmates or staff, fighting if injury results/weapon used, refusal to comply with a valid order, and violating any other posted rule or reg, for all of which he was later found guilty, in connection with the September 15, 2019 incident.

96.     At all times relevant hereto, Plaintiff was 58 years old, 5 feet, 9 inches tall, and weighed approximately 165 pounds.

97.     At all times relevant hereto, Inmate Tyler was 25 years old, 6 feet tall, and weighed approximately 182 pounds.

98.     At all times relevant hereto, Inmate Tyler was on the behavioral health caseload and was listed as having "SMI" (Serious Mental Illness).

99.     At all times relevant hereto, Inmate Tyler had a history of violent behavior and of violence against other inmates and prison staff.

### INMATE TYLER'S CRIMINAL AND INSTITUTIONAL BACKGROUND

100.    On March 30, 2015, Inmate Tyler was arrested and charged with Robbery, Theft, and two counts of Receiving Stolen Property.  On April 15, 2015, he pled guilty to Receiving Stolen Property and received a sentence of 24 months' probation.

101.    On October 19, 2016, while incarcerated, Inmate Tyler was charged institutionally with fighting in connection with an incident in which he was fighting with another inmate while returning to his housing area.

102.    On May 2, 2017, Inmate Tyler was arrested and charged with Contempt For Violation of Order or Agreement, Terroristic Threats With Intent To Terrorize Another, and Stalking - Repeatedly Commit Acts To Cause Fear.   On July 20, 2017, he pled guilty to Contempt For Violation of Order or Agreement and received a sentence of time in to 6 months confinement and pled guilty to Terroristic Threats With Intent To Terrorize Another and received a sentence of 3 to 6 months' confinement.

103.    On June 7, 2017, while incarcerated, Inmate Tyler was charged institutionally with disturbing other inmates or staff, refusal to comply with a valid order, and threatening harm, in connection with an incident in which he was screaming, banging on his bed, and kicking the walls.  He was later found guilty.

104.    On July 7, 2017, while incarcerated, Inmate Tyler was charged institutionally with fighting, and disturbing other inmates or staff, for all of which he was later found guilty, in connection with an incident in which he was fighting with another inmate.  Both inmates were injured during this fight.

105.    On July 26, 2017, while incarcerated, Inmate Tyler was charged institutionally with violating prison rules, for which he was later found guilty, in connection with an incident in which he intentionally clogged a toilet in a cell, causing it to be inoperable.

106.    On August 11, 2017, Inmate Tyler was again arrested and charged with Contempt For Violation of Order or Agreement and Resisting Arrest.  On September 14, 2017, he pled guilty to Contempt and received a sentence of 3 to 6 months' confinement.

18

107.    On September 27, 2017, while incarcerated, Inmate Tyler was charged institutionally with fighting in connection with an incident in which he was fighting with another inmate and banging on the gate of a cell.  He was later found guilty.

108.    On October 9, 2017, while incarcerated, Inmate Tyler was again charged institutionally with fighting in connection with an incident in which he was violently beating on his cellmate.  He was later found guilty.

109.    On September 21, 2018, while incarcerated, Inmate Tyler was charged institutionally with assaulting any staff member and disturbing other inmates or staff in connection with an incident in which he slapped the hand of a supervisor and then resisted being handcuffed.  He was later found guilty.

110.    On August 18, 2019, Inmate Tyler was again arrested and charged with Aggravated Assault, possession of an instrument of crime, simple assault, attempted Arson, and other related charges.

111.    Throughout Inmate Tyler's various incarcerations, his violent conduct caused him to be placed in segregation housing to keep him from harming other inmates.

112.    At all times, it was known by the Defendants that Anthony Tyler was a violent offender, with a violent criminal history, a history of institutional violence, and severe mental health illness.

113.    Defendants knew or had reason to know of facts that created a high degree of risk of physical harm to Plaintiff, and deliberately proceeded to act, or failed to act, in conscious disregard of or indifference to that risk, as evidenced by their actions in assigning Inmate Tyler to Plaintiff's cell despite their knowledge that Inmate Tyler had a history of violent behavior

and/or of violence against other inmates and prison staff and/or suffered from serious mental health illness.

114.   As a direct and proximate result the conduct of all Defendants, Plaintiff was caused to experience severe and catastrophic injuries and damages and to undergo multiple operations and procedures, including, but not limited to, the following:

      a.  bilateral facet dislocation at C4-C5 with associated complete spinal cord injury as well as extension distraction injury at C6-C7 disk space;

      b.  posterior cervical instrumented fusion at C3-C7, posterior cervical decompression using laminectomy type approach at C4-C5;

      c.  paralysis bilateral lower extremities;

      d.  paralysis bilateral upper extremities;

      e.  coma;

      f.  head laceration;

      g.  broken teeth;

      h.  dislocation of cervical facet joint;

      i.  hypoxemia;

      j.  bradycardia;

      k.  hypotension;

      l.  heart block/complete AV block;

      m.  implantation leadless pacemaker;

      n.  respiratory failure;

      o.  ventilator use;

      p.  autonomic dysfunction;

q.  dysphagia;

r.  tachypnea;

s.  Grade 4 liver laceration;

t.  multiple facial fractures including right mandible ramus fracture, right zygomatic arch fracture, and right lateral sinus wall fracture;

u.  neurogenic shock;

v.  fevers;

w.  ventilator associated pneumonia;

x.  left calf DVT;

y.  bronchoscopy, percutaneous tracheostomy;

z.  esophagogastroscopy, percutaneous endoscopic gastrostomy tube;

aa. neurogenic bladder;

bb. urinary tract infection;

cc. catheter placement;

dd. depression;

ee. sacrum breakdown;

ff.  past pain and suffering;

gg. future pain and suffering;

hh. past medical expenses;

ii.  future medical expenses;

jj.  past and future loss of earnings and earning capacity;

kk. past and future loss of life's pleasures;

ll.  mental anguish;

21

mm.     disfigurement;

nn. embarrassment;

oo. humiliation;

pp. incidental and other expenses; and

qq. such other injuries and damages as set forth in Plaintiff's medical records.

115.    As a result of the catastrophic injuries suffered by him, Plaintiff requires 24-hour care in a nursing home.

### COUNT I – CIVIL RIGHTS – 42 U.S.C. § 1983

**Plaintiff, Richard Hightower v. Defendants, City of Philadelphia, City of Philadelphia Department of Prisons, Curran-Fromhold Correctional Facility, and Warden John Delaney**

116.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

117.    Defendants, in all of their actions and inactions described herein, with regard to Plaintiff, Richard Hightower, were all acting under the color of state law.

118.    Defendant Warden John Delaney, through his experience in the correctional department and through carrying out his duties as Warden, knew of the propensity for violence among inmates within the Philadelphia Prison system.

119.    Defendant Warden John Delaney knew that inmates, with a history of violent crime, institutional violence, and mental health illness, created a substantial risk of harm to other inmates.

120.    Defendant Warden John Delaney, failed to train and/or supervise his correctional staff to ensure proper assessment, classification, and housing assignments to ensure inmates with a propensity for assaultive behaviors were not housed with other inmates.

121.    Defendant Warden John Delaney, failed to train and/or supervise his correctional staff to identify, prevent, respond, and intervene to threats of violence of inmates against other inmates.

122.    Defendant Warden John Delaney, failed to train and/or supervise his correctional staff to identify, prevent, response, and intervene to inmate assaults.

123.    Defendant Warden John Delaney was aware that his subordinates violated inmates' constitutional rights by failing to take reasonable measures to protect the inmates from assault at the hands of other inmates.

124.    Defendants were deliberately indifferent to the safety of Plaintiff, and failed to take reasonable measures to protect him, by housing him with inmate Tyler, who had a well-documented history of violent tendencies, a history of violence and criminal behavior, and mental health illness, and thereby violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

125.    Defendants were aware that Plaintiff had clearly established constitutional rights to bodily integrity.

126.    Defendants were aware that Plaintiff had clearly established constitutional rights to be free from cruel and unusual punishment in the form of violent assaults at the hands of known violent inmates.

127.    Plaintiff was incarcerated under conditions which presented a substantial risk of serious harm by housing him in a cell with a known violent and mentally ill inmate.

128.    Defendants knew or had reason to know of facts that created a high degree of risk of physical harm to another, and deliberately proceeded to act, or failed to act, in conscious disregard of or indifference to that risk, as evidenced by their actions in housing Plaintiff with

23

inmate Tyler, who had a well-documented history of violent tendencies, a history of violence and criminal behavior, and mental health illness.

129.    Defendants' conduct, as set forth above, violated Plaintiff's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and is remediable under 42 U.S.C. § 1983.

130.    Defendants' conduct, as set forth above, demonstrates that the harm caused to Plaintiff was a foreseeable and direct result of Defendants' conduct.

131.    Defendants' conduct, as set forth above, demonstrates that Defendants acted with deliberate indifference and conscious disregard of the great risk of serious harm to Plaintiff.

132.    As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff was caused to suffer the serious injuries described herein.

**WHEREFORE**, Plaintiff, Richard Hightower, demands judgment against Defendants City of Philadelphia, City of Philadelphia Department of Prisons, Curran-Fromhold Correctional Facility, and Warden John Delaney, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and delay damages, any and all relief available pursuant to 42 U.S.C. § 1983, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## <u>COUNT II – CIVIL RIGHTS – 42 U.S.C. § 1983</u>

### Plaintiff, Richard Hightower v. Defendants, Sergeant Shantel Major and Correctional Officer John Does 1-10

133.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

134.    Defendants in all of their actions and inactions described herein with regard to Plaintiff, Richard Hightower, were all acting under the color of state law.

135.    Defendants, through their experience as correctional department officers, knew of the propensity for violence among inmates within the Philadelphia Prison system.

136.    Defendants knew that inmates, with a history of violent crime, institutional violence, and mental health illness, created a substantial risk of harm to other inmates.

137.    Defendant subjected Plaintiff to a substantial risk of harm when they placed inmate Tyler into his cell.

138.    Defendants subjected Plaintiff to a substantial risk of harm when they failed to remove inmate Tyler after his request to be transferred from the cell with Plaintiff.

139.    Defendants subjected Plaintiff to a substantial risk of harm when they failed to remove Tyler after he made threats of harm against Plaintiff.

140.    Defendants subjected Plaintiff to a substantial risk of harm when they failed to intervene when Taylor began to assault Plaintiff.

141.    Defendants were deliberately indifferent to the safety of Plaintiff, and failed to take reasonable measures to protect him, by housing him with inmate Anthony Tyler, who had a well-documented history of violent tendencies, a history of violence and criminal behavior, and mental health illness, and thereby violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

142.    Defendants were deliberately indifferent to the safety of Plaintiff, and failed to take reasonable measures to protect him, when they failed to remove inmate Tyler and/or Plaintiff from the housing cell before, during, and after threats of harm were made by inmate Tyler, and thereby violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

143.    Defendants were deliberately indifferent to the safety of Plaintiff, and failed to take reasonable measures to protect him, when they failed to remove inmate Tyler and/or Plaintiff from the housing cell after inmate Taylor violently attacked Plaintiff, and thereby violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

144.    Defendants were aware that Plaintiff had clearly established constitutional rights to bodily integrity.

145.    Defendants were aware that Plaintiff had clearly established constitutional rights to be free from cruel and unusual punishment in the form of violent assaults at the hands of known violent inmates.

146.    Plaintiff was incarcerated under conditions which presented a substantial risk of serious harm by housing him in a cell with a known violent inmate.

147.    Defendants' conduct, as set forth above, demonstrates that the harm caused to Plaintiff was a foreseeable and direct result of Defendants' conduct.

148.    Defendants' conduct, as set forth above, demonstrates that Defendants acted with deliberate indifference and conscious disregard of the great risk of serious harm to Plaintiff.

149.    Defendants knew or had reason to know of facts that created a high degree of risk of physical harm to another, and deliberately proceeded to act, or failed to act, in conscious disregard of or indifference to that risk, as evidenced by their failure to take actions to protect Plaintiff despite threats of imminent violence made against him by Inmate Anthony Tyler, who had a well-documented history of violent tendencies, a history of violence and criminal behavior, and mental health illness.

150.    Defendants' conduct, as set forth above, violated Plaintiff's constitutional rights,

as guaranteed by the United States and Pennsylvania Constitutions, and is remediable under 42 U.S.C. § 1983.

151.    As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff was caused to suffer the serious injuries described herein.

**WHEREFORE**, Plaintiff, Richard Hightower, demands judgment against Defendants Sergeant Shantel Major and Correctional Officer John Does 1-10, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and delay damages, any and all relief available pursuant to 42 U.S.C. § 1983, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT III – MONELL CLAIMS

**Plaintiff, Richard Hightower v. Defendants, City of Philadelphia, City of Philadelphia Department of Prisons, and Curran-Fromhold Correctional Facility**

152.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

153.    Defendants' conduct, as set forth above, evinces a violation of Plaintiff's constitutional rights, including those guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

154.    As stated above, Defendants had customs and practices and maintained policies and/or procedures that they knew resulted in improper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness such as inmate Tyler, resulting in deprivation of other inmates' constitutional rights and resulting in serious injury and/or death to other inmates.  Despite this, Defendants failed to amend, revise, and/or replace these customs, practices, policies, and/or procedures, thereby depriving Plaintiff of his constitutional rights.

155.    Defendants failed to properly train, supervise, and/or monitor, and/or failed to have a proper policy and/or procedure regarding training, supervising and/or monitoring, correctional officers and supervisors, on the appropriate placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness such as inmate Tyler.

156.    Defendants failed to properly train, supervise, and/or monitor, and/or failed to have a proper policy and/or procedure regarding training, supervising and/or monitoring, correctional officers and supervisors, to identify, prevent, and intervene in assaultive conduct, thereby depriving Plaintiff of his constitutional rights.

157.    Defendants failed to enforce written policies and/or procedures for correctional officers and supervisors with regard to the placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness such as Anthony Tyler, thereby depriving Plaintiff of his constitutional rights.

158.    Defendants failed to properly train, supervise, monitor, or have a proper policy and/or procedure in place regarding training, supervision, and monitoring of correctional officers and supervisors to ensure proper placement and/or housing of inmates with violent tendencies and/or a history of violence and/or mental health illness such as Anthony Tyler.

159.    The above-referenced actions are outrageous, egregious, and conscience-shocking.

160.    Defendants knew or had reason to know of facts that created a high degree of risk of physical harm to another, and deliberately proceeded to act, or failed to act, in conscious disregard of or indifference to that risk, as evidenced by their customs, practices, polices, and/or procedures that allowed Plaintiff to be housed with Inmate Tyler, who had a well-documented

history of violent tendencies, a history of violence and criminal behavior, and mental health illness.

161.    As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff was caused to suffer the serious injuries described herein.

**WHEREFORE**, Plaintiff, Richard Hightower, demands judgment against Defendants City of Philadelphia, City of Philadelphia Department of Prisons, and Curran-Fromhold Correctional Facility, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and delay damages, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT IV – NEGLIGENCE**

**Plaintiff, Richard Hightower v. Defendants, Corizon Health, Inc., Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10**

162.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

163.    Defendant Corizon Health, Inc. and its medical providers, including Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10, had a duty to exercise reasonable care in carrying out their duties.

164.    Defendant Corizon Health, Inc. and its medical providers, including Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10, had a duty to exercise reasonable care,

when documenting and communication medical clearances of inmates, for the protection of third party inmates, including Plaintiff.

165.    Defendant Corizon Health, Inc., directly and by and through its agents, servants, and/or employees, violated its duty of care by failing to properly document and communicate inmate Tyler's medical clearance which resulted in his improper transfer to the intake unit and housing in a cell with Plaintiff.

166.    Defendant Corizon Health, Inc. failed to hire, select, retain, and properly supervise competent medical professionals to ensure accurate and timely documentation and communication of medical clearances of inmates, including inmate Tyler.

167.    Defendant Corizon Health, Inc. failed to properly train its medical providers to ensure proper documentation and communication of medical clearances related to inmates.

168.    Defendant Corizon Health, Inc. failed to establish and/or follow policies, practices, and/or procedures to ensure proper documentation and communication of medical clearances provided to inmates, such as inmate Tyler, to allow for appropriate placement and/or housing by the Correctional Staff so as to prevent injuries or harm to other inmates, including Plaintiff.

169.    Defendant Corizon Health, Inc., directly and by and through its agents, servants, and/or employees, violated its duty of care by failing to properly document and communicate the medical clearance provided to inmate Tyler to allow for appropriate placement and/or housing of Inmate Tyler by the Correctional Staff so as to prevent injuries or harm to other inmates, including Plaintiff.

170.    Defendant Corizon Health, Inc.'s violation of its duty of care to Plaintiff was a direct and proximate cause and a substantial factor in bringing about Plaintiff's serious injuries as described herein.

**WHEREFORE**, Plaintiff, Richard Hightower, demands judgment against Defendants Corizon Health, Inc., Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and delay damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT V – STATE LAW MEDICAL NEGLIGENCE

**Plaintiff, Richard Hightower v. Defendants, Corizon Health, Inc., Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10**

171.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

172.    Defendant Corizon Health, Inc. and its medical providers, including Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10, had a duty to comply with generally accepted medical standards of care.

173.    Defendant Corizon Health, Inc. and its medical providers, including Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10, had a duty to comply with generally accepted medical standards of care, when documenting and communication medical clearances of inmates, for the protection of third party inmates, including Plaintiff.

174.     Defendant Corizon Health, Inc., directly and by and through its agents, servants, and/or employees, had a duty to ensure proper documentation and communication of medical clearance provided to inmates to allow for appropriate placement and/or housing of inmates by the Correctional Staff so as to prevent injuries or harm to other inmates, including Plaintiff.

175.     Defendant Corizon Health, Inc., directly and by and through its agents, servants, and/or employees, violated its duty of care to Plaintiff by failing to properly document and communicate the medical care provided to Anthony Tyler to allow for appropriate placement and/or housing of inmate Tyler by the Correctional Staff so as to prevent injuries or harm to other inmates, including Plaintiff.

176.     Defendant Corizon Health, Inc. failed to hire, select, retain, and properly supervise competent medical professionals to document and communicate medical clearances, including inmate Tyler.

177.     Defendant Corizon Health, Inc. failed to properly train its medical providers to properly document and communicate medical clearances provided to inmates, including inmate Tyler.

178.     Defendant Corizon Health, Inc. failed to establish and/or follow policies, practices, and/or procedures to ensure proper documentation and communication of medical clearances to inmates, such as inmate Tyler, to allow for appropriate placement and/or housing by the Correctional Staff so as to prevent injuries or harm to other inmates, including Plaintiff.

179.     Defendant Corizon Health, Inc., directly and by and through its agents, servants, and/or employees, violated its duty of care by failing to properly document and communicate the medical clearance for inmate Tyler to allow for appropriate placement and/or housing of Inmate

Tyler by the Correctional Staff, so as to prevent injuries or harm to other inmates, including Plaintiff.

180.    Defendant Corizon Health, Inc.'s violation of its duty of care to Plaintiff was a direct and proximate cause and a substantial factor in bringing about Plaintiff's serious injuries as described herein.

**WHEREFORE**, Plaintiff, Richard Hightower, demands judgment against Defendants Corizon Health, Inc., Danielle McGettigan, LPN a/k/a Danielle McGettigan-Tischler, LPN, Anthony Matthews, RN a/k/a Anthony W. Matthews, RN, and Medical John Does 1-10, jointly and severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and delay damages, and such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

DATED: September 13, 2021          BY: _____

THOMAS R. KLINE, ESQUIRE
Tom.Kline@KlineSpecter.com
COLIN BURKE, ESQUIRE
Colin.Burke@KlineSpecter.com
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000
(215) 792-5523 Fax
*Attorneys for Plaintiff*

# EXHIBIT

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HIGHTOWER<br>c/o Gwen Maddox<br>604 Briar Cliff Road<br>Upper Darby, PA 19082<br><br>        *Plaintiff,*<br><br>   v.<br><br>CITY OF PHILADELPHIA<br>1515 Arch Street – 14th Floor<br>Philadelphia, PA 19102<br><br>   and<br><br>CITY OF PHILADELPHIA<br>DEPARTMENT OF PRISONS<br>7901 State Road<br>Philadelphia, PA 19136<br><br>   and<br><br>CURRAN-FROMHOLD CORRECTIONAL<br>FACILITY<br>7901 State Road<br>Philadelphia, PA 19136<br><br>   and<br><br>WARDEN JOHN DELANEY<br>Detention Center<br>8201 State Road<br>Philadelphia, PA 19136<br><br>   and<br><br>SERGEANT SHANTEL MAJOR<br>Curran-Fromhold Correctional Facility<br>7901 State Road<br>Philadelphia, PA 19136<br><br>   and | CIVIL ACTION<br><br>Case No. |

| CORRECTIONAL OFFICER JOHN DOES 1-10 | |
| c/o Curran-Fromhold Correctional Facility | |
| 7901 State Road | |
| Philadelphia, PA 19136 | |
| | |
| and | |
| | |
| CORIZON HEALTH, INC. | |
| 8201 State Road | |
| Philadelphia, PA 19136 | |
| | |
| and | |
| | |
| DANIELLE MCGETTIGAN, LPN a/k/a DANIELLE MCGETTIGAN-TISCHLER, LPN | |
| Corizon Health, Inc. | |
| 8201 State Road | |
| Philadelphia, PA 19136 | |
| | |
| and | |
| | |
| ANTHONY MATTHEWS, RN a/k/a ANTHONY W. MATTHEWS, RN | |
| Corizon Health, Inc. | |
| 8201 State Road | |
| Philadelphia, PA 19136 | |
| | |
| and | |
| | |
| MEDICAL JOHN DOES 1-10 | |
| c/o Corizon Health, Inc. | |
| 8201 State Road | |
| Philadelphia, PA 19136 | |
| | |
| *Defendants.* | |

## CERTIFICATE OF MERIT AS TO DEFENDANT CORIZON HEALTH, INC.

I, Colin Burke, Esquire, hereby certify that:

☐    An appropriate licensed professional has supplied a written statement to the undersigned

that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☐   An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☐   The claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☒   Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: _____
THOMAS R. KLINE, ESQUIRE
COLIN BURKE, ESQUIRE
*Attorneys for Plaintiff*

DATED:  September 13, 2021

3